[No. S092882. Jan. 14, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
BRUCE EDWARD COOPER, Defendant and Appellant.

## COUNSEL

Louis Marinus Wijsen, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Ronald A. Bass, Assistant Attorney General, Michael E. Banister, Christina V. Kuo and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Defendants sentenced to prison for criminal conduct are entitled to credit against their terms for all actual days of presentence and postsentence custody (Pen. Code,[1] §§ 2900, subd. (c), 2900.5, subds. (a), (b)) and while in prison custody, can earn postsentence good behavior/worktime credits (§ 2931) or prison worktime credits (§ 2933) to shorten the period of incarceration. Defendants detained in a county jail, or other equivalent specified facility, "prior to the imposition of sentence," may also be eligible for presentence good behavior/worktime credits (collectively referred to as conduct credits) of up to two days for every four days of actual custody. (§ 4019, subds. (a)(4), (b), (c), (e), (f).) Section 2933.1, subdivision (c), adopted in 1994, limits the authorized award of presentence conduct credits to a maximum of 15 percent of a defendant's actual period of presentence confinement for specified felons, including murderers. In this case, a jury convicted defendant for a murder that was committed on May 22, 1998. We granted review to determine whether the 15 percent limitation on presentence conduct credits applies to convicted murderers, such as defendant, who were sentenced under the 1978 version of section 190, which designates the punishment for murder.[2] As explained below, we conclude that section 2933.1 applies to limit defendant's award of presentence conduct credits.

---

[1]All further undesignated statutory references are to the Penal Code.

[2]In June 1998, almost two weeks after the murder in this case, the voters approved the legislative amendment to section 190 and the legislative enactment of section 2933.2 by the passage of Proposition 222. (Stats. 1996, ch. 598, §§ 1, 3-4; Stats. 1997, ch. 413, § 1; Prop. 222, as approved by voters, Primary Elec. (June 2, 1998); *People v. Herrera* (2001) 88 Cal.App.4th 1353, 1366-1367 [106 Cal.Rptr.2d 793].) Regarding defendants convicted of murder, section 2933.2 expressly prohibits the award of postsentence prison worktime credits and presentence conduct credits, while section 190, as amended, expressly prohibits the award

FACTUAL BACKGROUND

The information charged that defendant murdered his wife on May 22, 1998. (§ 187.) It further alleged that he personally used a dangerous weapon, a knife, during the commission of the crime. (§ 12022, subd. (b)(1).) The jury found defendant guilty of second degree murder and found the personal-use allegation to be true. The trial court imposed a sentence of 15 years to life on the murder conviction (§ 190), and a one-year consecutive determinate term on the personal-use finding. The court awarded defendant 336 days for actual time served (§ 2900.5, subd. (a)) and 50 days of presentence conduct credits (§ 4019, subds. (b), (c)). In calculating the presentence conduct credits, the court limited those credits to 15 percent of the actual time served under section 2933.1, subdivision (c).[3]

Defendant appealed and claimed, among other things, that the trial court miscalculated his presentence conduct credits under section 2933.1. Agreeing with defendant that the trial court erred in limiting those credits, the Court of Appeal awarded defendant full presentence conduct credits, as authorized under section 4019. The court modified the judgment by increasing the presentence conduct credits from 50 days to 168 days, but otherwise affirmed the conviction.

Defendant sought review here on an instructional issue not before us. The Attorney General filed a letter, which we deemed to be an answer, contesting the modification of sentence. We granted review solely on the credits issue.

DISCUSSION

 As in the Court of Appeal, defendant asserts that his murder sentence was based on the 1978 version of section 190, which had been adopted by the electorate by the passage of the Briggs Initiative. He argues that, because section 2933.1 was enacted by the Legislature in 1994 without voter approval, the limitation of presentence conduct credits against that sentence was an invalid modification of the Briggs Initiative. For the reasons stated below, we disagree.

On November 7, 1978, the voters amended section 190 by the passage of the Briggs Initiative. The amendment increased the punishment for first

---

of postsentence prison worktime credits. (§§ 190, subd. (e), 2933.2, subds. (a), (c); *People v. Herrera, supra,* 88 Cal.App.4th at pp. 1366-1367.) Those provisions do not apply here because the crime in this case occurred before the operative date of Proposition 222.

[3]At trial, defendant failed to object to the trial court's limitation of presentence conduct credits under section 2933.1. However, the Attorney General concedes that defendant did not waive the issue regarding the appropriate formula for calculating the presentence conduct credits. (*People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139 [66 Cal.Rptr.2d 77].)

degree murder from an indeterminate term of life imprisonment to a term of 25 years to life, and for second degree murder from a term of five, six, or seven years to 15 years to life in state prison. (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978); see Note, Deering's Ann. Pen. Code (1985 ed.) foll. § 190, p. 82; *People v. Bright* (1996) 12 Cal.4th 652, 662-663, fn. 7 [49 Cal.Rptr.2d 732, 909 P.2d 1354].) The purpose of the Briggs Initiative was to substantially increase the punishment for persons convicted of first and second degree murder. (*In re Jeanice D.* (1980) 28 Cal.3d 210, 219 [168 Cal.Rptr. 455, 617 P.2d 1087].) Former section 190, as amended by the Briggs Initiative, provided for credits as follows: "The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time." (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978), reprinted at Deering's Ann. Pen. Code, *supra*, § 190, p. 82 (former § 190.3).)

At the time the Briggs Initiative was approved, article 2.5 contained only provisions relating to prison conduct credits: sections 2930 (notice to prisoners about availability of credits), 2931 (good behavior and participation credits), and 2932 (forfeiture of such credits). (Stats. 1976, ch. 1139, § 276, pp. 5146-5149; *In re Oluwa* (1989) 207 Cal.App.3d 439, 442 [255 Cal.Rptr. 35].) The Legislature had enacted article 2.5 as part of the Determinate Sentencing Act of 1976, to provide incentives for prison inmates to refrain from criminal conduct and to encourage participation in rehabilitative activities by allowing inmates to reduce their sentences for good behavior and participation in prison activities. (*People v. Austin* (1981) 30 Cal.3d 155, 163 [178 Cal.Rptr. 312, 636 P.2d 1].)

In 1988 and 1994, the voters again approved legislative amendments to section 190 by the passage of Propositions 67 and 179, respectively. The amendments increased the penalties for certain designated murders not applicable here, consistent with the purpose of the Briggs Initiative to increase the punishment for persons convicted of murder. (Stats. 1987, ch. 1006, § 1, pp. 3367-3368, approved by voters as Prop. 67, eff. June 8, 1988; Ballot Pamp., Primary Elec. (June 7, 1988) analysis and text of Prop. 67, pp. 8-9; and see Legis. Counsel's Dig., Sen. Bill No. 402, 4 Stats. 1987 (1987-1988 Reg. Sess.) Summary Dig., p. 335; Stats. 1993, ch. 609, § 3, p. 3266, approved by voters as Prop. 179, eff. June 8, 1994; Ballot Pamp., Primary Elec. (June 7, 1994) analysis, text, and argument in favor of Prop. 179, pp. 22-23, 29; Legis. Counsel's Dig., Sen. Bill. No. 310, 5 Stats. 1993 (1993-1994 Reg. Sess.) Summary Dig., pp. 236-237; see Notes, Deering's Ann. Pen. Code (2001 supp.) foll. § 190, pp. 38-39.)

At the time of the murder in this case (May 1998), the credits provision in subdivision (a) of former section 190, as amended effective 1994, read: "Except as provided in subdivision (b), Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term of 15, 20, or 25 years in the state prison imposed pursuant to this section, but the person shall not otherwise be released on parole prior to that time." (Stats. 1993, ch. 609, § 3, p. 3266.)

In 1994, the Legislature added section 2933.1 to article 2.5 as an urgency measure. (Stats. 1994, ch. 713, § 1, p. 3448.) For specified felons, section 2933.1 limits presentence conduct credits authorized under section 4019. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 31-32 [108 Cal.Rptr.2d 625, 25 P.3d 1103]; *People v. Aguirre, supra,* 56 Cal.App.4th at pp. 1138-1141.) Section 2933.1 became effective on September 21, 1994 (*People v. Camba* (1996) 50 Cal.App.4th 857, 867 [57 Cal.Rptr.2d 907]), after the passage of Proposition 179, and states, in relevant part: "(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933. [¶] . . . [¶] (c) Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, . . . following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)."

Murder is one of the qualifying felony offenses specified in section 667.5, subdivision (c)(1).

Relying on *In re Oluwa, supra,* 207 Cal.App.3d at page 445, defendant argues that, at the time of his offense, former section 190 incorporated by specific reference the code sections contained in article 2.5 at the time of the Briggs Initiative. Because former section 190 expressly authorized article 2.5 credits to reduce the minimum term imposed and section 2933.1 later limited the availability of credits without voter approval, defendant claims that section 2933.1 is inapplicable to his sentence. He argues that, instead, he is entitled to presentence conduct credits under the more favorable section 4019 formula.[4] On the other hand, the Attorney General argues that former section 190's reference to article 2.5 in the 1978 Briggs Initiative was

---

[4]Defendant was sentenced under former section 190 as it was amended by the passage of Proposition 179 in 1994. He maintains that former section 190 incorporated by specific reference the code sections contained in article 2.5 at the time of the Briggs Initiative. Government Code section 9605 supports his position. It provides in pertinent part that "Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The portions which are not altered are to be considered as

"merely a general reference to an entire system of laws regarding credits" and that any subsequent credits modifications by the Legislature were to be included in section 190's general reference to the credits scheme. We agree with defendant's characterization that the reference to article 2.5 was a specific reference rather than a general one, as asserted by the Attorney General. Nevertheless, although we reject the Attorney General's underlying analysis, we agree with the Attorney General that the trial court's application of the section 2933.1 credits limitation against defendant's sentence was *not* an invalid modification of the Briggs Initiative.

A statute enacted by voter initiative may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval. (Cal. Const., art. II, § 10, subd. (c).) The Briggs Initiative did not authorize the Legislature to amend its provisions without voter approval. (*In re Oluwa, supra,* 207 Cal.App.3d at pp. 445-446.) ■ " 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [Citations.] [¶] . . . [¶] . . . [T]here is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time, and . . . as they may be subjected to elimination altogether by repeal. [Citations.]' " (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) ■ An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision. (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1485 [76 Cal.Rptr.2d 342]; *Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772, 776 [145 Cal.Rptr. 819].)

---

having been the law from the time when they were enacted; the new provisions are to be considered as having been enacted at the time of the amendment; and the omitted portions are to be considered as having been repealed at the time of the amendment." The voter-approved amendments to former section 190—Proposition 67 in 1988 and Proposition 179 in 1994—did not substantively change the credits provision in the 1978 version of the Briggs Initiative. Because there were no changes to the credits provision, there were no reenactments. (*In re Oluwa, supra,* 207 Cal.App.3d at pp. 446-447.) In any event, even if the 1994 version of former section 190 refers to article 2.5 in effect at the time Proposition 179 was approved, there were no dispositive changes to article 2.5 between the passages of the Briggs Initiative in 1978 and Proposition 179 in 1994. Article 2.5, at the times the Briggs Initiative and Proposition 179 were approved, contained only provisions that authorized the award of postsentence prison conduct credits. In addition, Proposition 179 was approved before the effective date of section 2933.1.

In *Oluwa*, the issue was whether the defendant, who was sentenced to 15 years to life for second degree murder, was entitled to a more favorable credit calculation for postsentence worktime credits under section 2933. (*In re Oluwa, supra*, 207 Cal.App.3d 439.) In 1982, after the passage of the Briggs Initiative, the Legislature enacted section 2933 without voter approval.[5] The Court of Appeal determined that the Briggs Initiative had adopted, by specific reference, the provisions contained in article 2.5 and incorporated those provisions in the form they existed at the time of the election and not in the form as subsequently modified. The court relied on a legislative analysis accompanying the initiative's ballot statement which specifically addressed the availability of conduct credits and advised voters that defendants sentenced to 15 years to life in prison would have to serve a minimum of 10 years before becoming eligible for parole. It concluded that the electorate clearly intended that a second degree murderer serve 10 years before parole consideration and that an application of the more liberal credits scheme under section 2933 would be contrary to the voter's intent. (*In re Oluwa, supra*, at pp. 445-446.) The court reasoned, "The Legislature should not be permitted to do indirectly that which it cannot do directly." (*Id.* at p. 446.)

■ In this case, the Court of Appeal recognized that, unlike the expansion of credits in *Oluwa*, the limitation of credits by section 2933.1 does not directly contradict the intention of the electorate in approving the Briggs Initiative. It nevertheless concluded that "the limitation of credits effects no less an amendment of section 190."

We disagree. ■ To determine the meaning of a statute, we seek to discern the sense of its language, in full context, in light of its purpose. (*In re Cervera* (2001) 24 Cal.4th 1073, 1077 [103 Cal.Rptr.2d 762, 16 P.3d 176].) The relevant portion of former section 190, as approved by the Briggs Initiative, stated: "The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years in state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time." (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7,

---

[5]In 1982, the Legislature expanded the postsentence credits scheme, contained in article 2.5, by adding sections 2933 (worktime credit), 2934 (waiver of right to receive good behavior credits), and 2935 (additional reduction of sentence for heroic act) to that article. (Stats. 1982, ch. 1234, §§ 4-6, pp. 4551-4553.) Section 2933 allows inmates to reduce their sentences by a maximum one-half for " 'performance in work, training or education programs . . . .' " (*In re Oluwa, supra*, 207 Cal.App.3d at p. 443.) Section 2934 allows an already sentenced inmate to waive the right to receive less favorable good behavior credits under section 2931 (reduction of a sentence by a maximum one-third) and to receive thereafter the more generous conduct credits allowed by section 2933. (*In re Oluwa, supra*, at p. 443.)

1978), reprinted at Deering's Ann. Pen. Code, *supra*, § 190, p. 82.) At the time the initiative was approved, article 2.5 contained only sections 2930, 2931, and 2932 (*In re Oluwa, supra*, 207 Cal.App.3d at p. 445), provisions that only authorized the award of *postsentence* prison conduct credits. (See *People v. Sage* (1980) 26 Cal.3d 498, 504-506 [165 Cal.Rptr. 280, 611 P.2d 874].) The provisions currently contained in article 2.5 continue to authorize only *postsentence* prison conduct credits. (See *People v. Buckhalter, supra*, 26 Cal.4th at p. 31; *In re Cervera, supra*, 24 Cal.4th at pp. 1078-1079; *People v. Thomas* (1999) 21 Cal.4th 1122, 1125 [90 Cal.Rptr.2d 642, 988 P.2d 563] [under the "Three Strikes" law, statutory language referring to article 2.5 referred to postsentence, not presentence conduct credits]; *People v. Goodloe* (1995) 37 Cal.App.4th 485, 488-489 [44 Cal.Rptr.2d 15].) Sections 2900.5 and 4019, which authorize the award of *presentence* conduct credits (*People v. Buckhalter, supra*, 26 Cal.4th at pp. 30-32; *People v. Goodloe, supra*, 37 Cal.App.4th at p. 495), were and continue to be in a different article. (See Penal Code, pt. 3, tit. 1, ch. 7, art. 1; *id.*, tit. 4, ch. 1; see also Notes, Deering's Ann. Pen. Code, *supra*, foll. § 2900.5, pp. 409-410, 411; *id.* (2001 supp.) foll. § 2900.5, p. 67; *id.*, § 4019, p. 41.) Although section 2933.1 is currently contained in article 2.5, that section does not authorize the award of presentence conduct credits. It simply limits the presentence conduct credits authorized by section 4019. (See *People v. Buckhalter, supra*, 26 Cal.4th at pp. 31-32; *People v. Thomas, supra*, 21 Cal.4th at p. 1126.)

 Thus, the first clause, in referring to the *availability* of credits under "Article 2.5 (commencing with Section 2930) . . . to reduce any minimum term" for those defendants sentenced under former section 190, was specifically referring only to the availability of *post*sentence conduct credits. This clause, authorizing the availability of postsentence conduct credits to reduce a murder term, when read together with the second clause, "but such person shall not otherwise be released on parole prior to such time," reflects the voters' intent to establish the *absolute* minimum prison term a convicted murderer must serve, *after* the award of the term-shortening postsentence conduct credits. (See *People v. Jenkins* (1995) 10 Cal.4th 234, 245, fn. 7 [40 Cal.Rptr.2d 903, 893 P.2d 1224] [Briggs Initiative established a *minimum* prison term a convicted murderer must serve].) As explained in *Oluwa*, the legislative analysis accompanying the ballot statement assured the voters that the award of article 2.5 postsentence conduct credits would reduce a sentence of 15 years to life to a minimum term of 10 years before parole eligibility. (*People v. Oluwa, supra*, 207 Cal.App.3d at pp. 442-443.)

In arguing that the trial court's limitation of his presentence conduct credits was an improper legislative amendment, defendant *assumes* that he is entitled to full presentence conduct credits under section 4019. However, in

determining electorate intent, we believe that the language of former section 190 presents an ambiguity. On the one hand, the phrase, "but such person shall not *otherwise* be released on parole prior to such time" (italics added), can be interpreted to impliedly prohibit the award of *any* conduct credits, *other than* postsentence conduct credits, to murderers. Under this construction, defendant is not entitled to *any* presentence conduct credits under section 4019.

On the other hand, another reasonable interpretation is that former section 190, in referring specifically to article 2.5 prison conduct credits, was addressing *only* the manner in which postsentence conduct credits can apply to reduce a murder sentence without any reference to presentence conduct credits. Because the statute does not preclude the award of presentence conduct credits to defendants convicted of murder, section 4019, which generally authorizes such credits, remains operative. Under this construction, defendant is not precluded from an award of presentence conduct credits under section 4019. This interpretation is consistent with the Attorney General's position. He concedes that convicted murderers whose cases fall into the window period between the effective dates of section 2933.1 and Proposition 222 are entitled to some presentence conduct credits. Moreover, because an ambiguity in the statutory language should be construed " 'as favorably to the defendant as its language and the circumstances of its application may reasonably permit' " (*People v. Garcia* (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829]), we adopt the latter construction.[6] Consequently, because former section 190 does not specifically authorize *or* prohibit presentence conduct credits, any limitation of such credits against defendant's sentence, otherwise authorized by section 4019, is not an invalid modification of the Briggs Initiative.[7]

---

[6]Allowing section 4019 conduct credits against the sentences of convicted murderers under former section 190 does not appear to contravene the electorate's intent. Under section 4019, defendant is entitled to a maximum of two additional days for every four days of actual custody in county jail. (§ 4019, subds. (a)(4), (b), (c), (e), (f); *People v. Buckhalter, supra,* 26 Cal.4th at p. 30.) This formula results in a one-third reduction of the term of confinement (*People v. Ramos* (1996) 50 Cal.App.4th 810, 820 [58 Cal.Rptr.2d 24]; *People v. DeVore* (1990) 218 Cal.App.3d 1316, 1319 [267 Cal.Rptr. 698]), similar to the formula used in the award of postsentence conduct credits under section 2931. (*In re Oluwa, supra,* 207 Cal.App.3d at p. 442 [§ 2931 authorizes a maximum one-third reduction of the term of confinement].) Thus, unlike the more favorable section 2933 postsentence credits scheme at issue in *Oluwa,* a prisoner awarded presentence conduct credits under section 4019 is still required to serve the minimum two-thirds term in actual confinement collectively in county jail and prison.

[7]Before 1982, section 4019 provided presentence conduct credits for certain city and county jail detainees, including misdemeanants in jail custody, both before and after conviction and sentencing (§ 4019, subd. (a)(1)-(3)), but did not expressly allow such credits to persons detained in jail on felony charges before conviction and sentencing. (Stats. 1976, ch.

*Oluwa* is distinguishable because it involved the legislative amendment of article 2.5 postsentence conduct credits. (See *People v. Aguirre, supra,* 56 Cal.App.4th at p. 1140 ["[s]ection 2933 [is a] purely postsentence statute"].) Unlike *Oluwa,* here the trial court's restriction of *presentence* conduct credits under section 2933.1 is not inconsistent with former section 190 and does not otherwise circumvent the intent of the electorate in adopting the Briggs Initiative. (Cf. *People v. Jenkins, supra,* 10 Cal.4th at p. 245, fn. 7; *People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1659-1661 [52 Cal.Rptr.2d 561].) Therefore, the Court of Appeal erred in determining that the trial court improperly limited defendant's presentence conduct credits under section 2933.1.

## CONCLUSION

We reverse the judgment of the Court of Appeal relating to the credits issue and remand the case to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

---

286, § 4, pp. 595-596; *People v. Sage, supra,* 26 Cal.3d at pp. 504, 507.) In *People v. Sage, supra,* 26 Cal.3d at pages 506-509, we held that this discrepancy in the presentence jail treatment of misdemeanants and felons violated equal protection. (*People v. Buckhalter, supra,* 26 Cal.4th at p. 36.) In 1982, the Legislature codified *Sage* by the addition of subdivision (a)(4) to section 4019. (Stats. 1982, ch. 1234, § 7, pp. 4553-4554; *People v. King* (1992) 3 Cal.App.4th 882, 885 [4 Cal.Rptr.2d 723].)